## Eyerman et al. v. Hutchinson

*Jerome L. Markovitz*, for plaintiffs.

*Cornelius C. O'Brien, Jr.*, for defendant.

DAVIS, J., January 6, 1954.—Three actions in trespass arising out of the same acts and circumstances were instituted and consolidated for trial. A jury rendered its verdict in favor of defendant. Plaintiffs' motions for a new trial and for judgment non obstante veredicto were not granted. We now state our reasons for our decision.

Plaintiffs, employes of a corporation, complain of personal injuries suffered while picketing at the corporation's place of business. They allege that defendant, president of the corporation, negligently in one count and wilfully in a second count, drove a truck into the picket line causing the personal injuries for which damages were sought.

The salient facts and circumstances surrounding the cases are in dispute. The undisputed facts are that on August 4, 1951, defendant, accompanied by an employe, drove up to the plant in a truck owned and then and there operated by an independent contractor,

Maurice Berkowitz. On arriving at the plant, when the driver declined to operate the truck further than the entrance to a tunnel driveway, defendant took the driver's seat and drove the truck through the tunnel driveway into the plant yard.

As to the disputed facts, plaintiffs testified as follows: They, together with other women employes, were formed into a picket line marching in front of the driveway entrance when defendant arrived at the plant in the truck as aforesaid. The truck was driven across the pavement slowly to the tunnel entrance without being stopped before reaching the tunnel, and stopped for the first time with its front end just inside the tunnel. They testified further that after one false start, the truck driver refused to go further because the pickets were across the driveway and were falling back into the tunnel as the truck approached the entrance. They stated further that defendant then displaced the driver and drove the truck into the tunnel striking plaintiffs and causing physical injuries to them.

Defendant and witnesses on his behalf testified quite differently. They stated that as the truck approached the plant, there was no picket line, that the women were congregated at the steps to the plant entrance, running over to the driveway entrance when the truck approached. Defendant's version showed substantially that the truck was stopped midway from the curb to the tunnel entrance when defendant replaced the driver; that the pickets then and there formed a chain several feet in front of the truck; that the union agent stood behind the pickets exhorting them not to leave; that defendant announced his legal right to proceed and warned that he intended to enter the plant and that he inched the truck through the driveway ever so slowly, never closing the gap between the truck and the picket line; that when part way

through the tunnel, the line parted and the pickets left the tunnel on either side of the truck without incident.

Such were the versions of what transpired. Other disputed issues included the injuries, their seriousness, recriminations and the like, but are not germane to a disposition of the present motions.

Before addressing ourselves to the legal questions involved we feel constrained to point out that while the litigants were engaged in what they considered furthering the respective interests of their union and management in a struck plant, neither the union nor the corporation is a party hereto. None of the parties to the litigation can find solace or right for what was done in the fact that there was a labor dispute in existence at the time. Plaintiffs had no legal right to form a human chain to bar the plant, if they did, by reason of the existence of a labor dispute, and defendant had no legal right to break that human chain, if he did, by reason of the corporation's ownership of the property. The parties are as responsible to each other for their acts as though they were not respectively president of a corporation and employes of it. Neither the rights of management nor labor are involved. Labor law is not applicable. These are not labor cases.

Directing our attention first to plaintiffs' motions for judgment non obstante veredicto, we must, under the law, view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the verdict: Falen et ux. v. Monessen Amusement Co., 363 Pa. 168; Binns v. First National Bank of California, Pa., 367 Pa. 359.

The issues are two-fold: Whether defendant wilfully and intentionally drove the truck into plaintiffs, and whether defendant negligently and carelessly drove the truck injuring plaintiffs.

We cannot as a matter of law determine that defendant deliberately drove the truck into plaintiffs, injuring them. There was conflicting testimony concerning the manner of operation of the truck. Plaintiffs testified that they were hurt when the truck lunged forward, stopped and rolled back slightly. Defendant testified that the truck was driven forward slowly, inching its way; that it never lurched suddenly or stopped and rolled back; that the picket line was never in contact with the truck, always several feet in front of it, and that the truck never struck anyone. The evidence presented clear questions of fact which could only be determined by a jury and they were resolved in favor of defendant. See Rice et al. v. Bauer, 359 Pa. 544.

It should be noted that there were serious conflicts in the testimony of the various witnesses presented on behalf of plaintiffs. For example, two of the plaintiffs, Iva Eyerman and Anna Yakolbczyk, testified that when the truck first appeared driven by Berkowitz, it turned off the street and continued uninterruptedly into the tunnel, forcing the pickets in head of it, before it came to a stop. On the other hand, Edna McDevitt, the other plaintiff, and Betty Kritzberger, a union official who was in charge of the picket line, both testified that the truck stopped the first time while it was still on the pavement outside of the tunnel, and did not enter the tunnel until started again. Thus, on the crucial issue of whether plaintiffs were forced into the tunnel without warning and without means to escape, plaintiffs' own witnesses were not in agreement.

Even if plaintiffs' testimony were uncontradicted, the credibility of the witnesses would still be a matter for the jury: Nanty-Glo Boro. v. American Surety Co., 309 Pa. 236; MacDonald v. P.R.R. Co., 348 Pa. 558.

Nor are we certain that plaintiffs seriously contend that this court should enter judgments in their favor notwithststanding the verdicts in defendant's favor. In their argument to this court and their brief in support of their motions, their counsel treats the motion for judgment non obstante veredicto as a motion for a new trial. He pleads for a new trial rather than for judgment in their favor.

Be that as it may, we have looked at the evidence in the light most favorable to defendant in whose favor the verdicts were rendered, as we are required to do, and conclude that plaintiffs' motions for judgment non obstante veredicto must be denied.

Plaintiffs' motions for new trial include, in addition to the usual general reasons that the verdict was against the evidence, the weight of the evidence, the law and the charge of the court, 14 additional and specific reasons. Of the latter, those numbered 5, 6, 7, 8, 9, 10, 12, 14 and 15 are devoid of merit and do not warrant consideration. Reason numbered 13 assigns as reason for a new trial, the trial judge's allowing defendant to answer a question over plaintiffs' counsel's objection as to its form. Defendant was testifying at the time and had stated that the line of pickets was well in front of the truck and supported in the rear by the union business agent when he was asked: "How far in front of the front bumper was this solid line of pickets which was being supported from the rear by Mr. Muscheck?" This was for the trial judge's sound discretion and did not prejudice plaintiffs' cause.

Reasons numbered 16, 17, 18 and 19 are arguments better made to a jury and do not point out error in the conduct of the trial.

As to the general reasons assigned for a new trial it has been said that to award a new trial on the grounds that the verdict is against the evidence or the weight of the evidence, it must appear from the

record that the "jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative so that right may be given another opportunity to prevail": Jones et vir v. Williams et al., 358 Pa. 559, 564; Carroll v. Pittsburgh, 368 Pa. 436, or that the verdict was "perverse or capricious" or "plainly against the weight of the evidence": Elia v. Olszewski, 368 Pa. 578.

In the Carroll case, supra, four elements appear to have been carefully considered, i.e.: (1) The number of witnesses for each party, (2) credibility based upon demeanor as commented on by the trial judge, (3) interest or probable bias of the several witnesses and (4) the plausibility of the testimony in view of human experience.

Applying these standards to the instant case: (1) Plaintiffs offered the testimony of four witnesses in their case in chief and one in rebuttal as to the circumstances and manner of the picketing and truck driving. Defendant offered the testimony of three witnesses as to the same circumstances, to the effect that defendant proceeded carefully, gave warning and was unaware of any injuries. In addition, defendant offered two witnesses tending to impair the credibility of the several plaintiffs' testimony; (2) the trial judge's charge was not excepted to in any respect, neither as to instructions concerning witnesses' demeanor nor otherwise; (3) all of the parties were extremely interested, if not biased, and perhaps several of their witnesses were likewise. Defendant's witness Berkowitz was free from any possible interest in the outcome of the case, yet his testimony substantiated defendant's version and not plaintiffs'; (4) it is both plausible and more in the view of human experience that defendant, who appeared to be a stable, well-balanced business man, did not proceed with intent to

inflict injury and bodily harm. The jury's verdict was not against the evidence or the weight of the evidence.

As we view the record, it was for the jury to determine whether defendant wilfully injured plaintiffs, or negligently drove the truck at a time and place when and where plaintiffs were contributorily negligent.

What was said in Decker v. Kulesza, 369 Pa. 259, by Mr. Justice Chidsey, at page 264, is equally applicable to these cases. He stated therein:

"We also find it impossible to consider the verdicts to be against the weight of the evidence. The case presented conflicting testimony on the part of a number of witnesses on each side. A new trial will not be granted because of a mere conflict in testimony, *Jones v. Williams,* supra; *Wilson v. Kallenbach,* 332 Pa. 253, 2 A. 2d 727; *Kennelly v. Waropoyak,* 266 Pa. 94, 109 A. 608; *Harmer v. American Railway Express Co.,* 269 Pa. 271, 112 A. 449; or because the trial judge on the facts would have arrived at a different conclusion: *Donnelly v. Pennsylvania Co.,* 552 Pa. 175, 97 A. 272. . . ."

Whatever error plaintiffs' counsel attributes to the verdict being announced by a juror other than the foreman was corrected when the jury members were polled as they were and the verdict recorded as their unanimous verdict.

However sympathetic we might feel toward plaintiffs and their cause, we cannot disturb the unanimous finding of a jury of their peers on issues in their exclusive province; to do so would clearly invade the jury's sphere and usurp its function: Jones et vir v. Williams et al., 358 Pa. 559. Nor may a trial judge award a new trial simply because he believes that the interests of justice require it: Beal v. Reading Co., 370 Pa. 45.

Plaintiffs' motions for judgment non obstante veredicto and new trials accordingly were dismissed.